Filed 11/20/15  In re E.A. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.A., et al., Persons Coming Under the Juvenile Court Law. | B263781 (Los Angeles County Super. Ct. No. CK52408) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  MANUEL A.,  Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of the County of Los Angeles, Carlos Vasquez, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Appellant, Manuel A.

Office of the County Counsel, Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Respondent.

## INTRODUCTION

M.A. (father) appeals from the juvenile court's orders of April 21, 2015 terminating parental rights to his six children ages three to eight years old (children) under Welfare and Institutions Code section 366.26.[1] He contends substantial evidence does not support the finding the exception to termination in section 366.26, subdivision (c)(1)(B)(i) did not apply. We affirm.

## STATEMENT OF FACTS AND PROCEDURE

On May 21, 2013, the children were declared dependents of the court under section 300, subdivision (b), based on sustained allegations that there was a substantial risk they would suffer serious physical harm or illness as a result of the parents' failure or inability to supervise or protect the child adequately, in that father physically abused the children's older half-sibling and the parents engaged in violent physical altercations in the presence of the children.[2] Custody was taken from the parents, reunification services were ordered, and father was ordered to participate in parenting and individual, domestic abuse, and anger management counseling. The juvenile court granted father monitored visitation, and gave the Department of Children and Family Services (Department) discretion to liberalize the visitation.[3]

The five older children had special needs, and the youngest was diagnosed with

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Maria A. is the children's mother. The parents were married. The court found father to be the children's presumed father.

[3] In an earlier dependency case, the four older children were declared dependents of the court in 2010, because father transported them in a vehicle while under the influence of illicit drugs and without placing them in safety restrained seats. The children were returned home and jurisdiction was terminated in 2011.

poor weight gain. The maternal grandparents had long been a part of the children's lives. When they learned the children were going to be placed in foster care, they asked the Department to place the children with them. They provided a home for the children since March 2013. The children thrived in their care. They loved the children and wanted to adopt them. They were willing to maintain ongoing familial ties.

Father was afforded two hours of unmonitored visits on Sundays. He made no effort to celebrate the children's birthdays. He did not give them gifts on their birthdays or at Christmas. On occasions, the children were returned to the caretakers wearing wet pampers. Even though reunification services had been terminated, father told the children he was going to get them all back and asked them whether they wanted to live with him or the mother. He told them he was going to buy a big home when they were returned to him. Father did not speak to the caretakers because he had committed financial fraud against maternal grandmother.

On April 21, 2015, the court held a contested section 366.26 hearing to determine the permanent plan. The Department introduced into evidence a section 366.26 report dated January 7, 2015, a last minute information report dated February 19, 2015, and two last minute information reports dated April 21, 2015. The Department recommended that parental rights be terminated and the court order a permanent plan of adoption. Father contended his relationship with the children was a compelling reason parental rights should not be terminated under the exception to termination in section 366.26, subdivision (c)(1)(B)(i). He introduced into evidence documents he alleged demonstrated his involvement in school projects, participation in the individualized education program process, and attendance at medical treatments for the half-sibling. He testified he usually visited the children twice a week for six hours each visit. He bathed them, washed their clothes, helped with homework, and took them to the park, breakfast, and church. For 12 months in 2013, he lived in the maternal grandparents' home to help with the children, even though he knew such contact was a violation of the court's order. During the past six months, he took the children to dental appointments. He denied he

3

committed fraud against the maternal grandmother, told the children they would move into a large home with him, failed to change diapers, and failed to celebrate the children's birthdays and Christmas. He testified the children asked him when they were going to stay with him.

The court found father had regular visitation but "[there was no] compelling reason for determining that the termination of the parental rights would be detrimental for the children." Father failed to show that there is a parental relationship between parent and child. "[T]he best that can be said . . . is that he has assisted at times and has participated at times with the raising of the children by the maternal grandparents. . . . [¶] . . . [¶] He has had two hours of unmonitored visits since September [2014], but that is . . . a very limited time period for unmonitored visits per week[.]" The court found that "the benefits of a stable and permanent home provided by adoption [would not be] outweighed by the benefits from the continued relationship between . . . [father] and the child[ren]." Concluding the exception to adoption did not apply and the children were likely to be adopted, the court terminated parental rights and ordered a permanent plan of adoption. The court designated the maternal grandparents to be the prospective adoptive parents.

## DISCUSSION

### Substantial Evidence Supports the Finding the Exception in Section 366.26, Subdivision (c)(1)(B)(i), Does Not Apply

Father contends the dependency court abused its discretion in terminating parental rights, because he presented sufficient evidence that the exception to termination in section 366.26, subdivision (c)(1)(B)(i) applied. We disagree with the contention.

We review the court's finding whether a parental relationship exists under the substantial evidence test and the determination of whether that relationship is sufficiently

4

important that the detriment from its termination would outweigh the benefit of adoption under the abuse of discretion standard. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315; *In re J.C.* (2014) 226 Cal.App.4th 503, 530.) Under the substantial evidence standard of review, if the judgment or finding is supported by substantial evidence, it must be upheld, even though substantial evidence may also exist that would support a contrary judgment and the dependency court might have reached a different conclusion had it determined the facts and weighed credibility differently. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Thus, the pertinent inquiry when a finding on the section 366.26, subdivision (c)(1)(B)(i) exception is challenged is whether substantial evidence supports the finding, not, as father argues, whether a contrary finding might have been made. "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citations.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321; see also *In re Dakota H., supra,* at p. 228 ["[w]e do not reweigh the evidence"].) Our Supreme Court has said that when a "determination [is] committed to the sound discretion of the juvenile court, the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. . . . [W]e have recently warned: 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Under section 366.26, subdivision (c)(1)(B)(i), if reunification services have been terminated and the child is adoptable, the dependency court must terminate parental rights unless it "finds a compelling reason for determining that termination would be detrimental to the child due to [the circumstance that the parent has] [¶] . . . maintained

5

regular visitation and contact with the child and the child would benefit from continuing the relationship."

"'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.' [Citation.] 'A section 366.26 hearing . . . is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] 'The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52-53.) "At this stage of the proceedings, if an appropriate adoptive family is or likely will be available, the Legislature has made adoption the preferred choice. [Citation.]" (*Id.* at p. 49; see also § 366.26, subd. (b)(1) [adoption is the preferred plan].) " '[I]t becomes inimical to the interests of the [child] to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*In re Celine R., supra,* at p. 53, original italics) To overcome the preference for adoption the parent must show severing the parent-child relationship would deprive the child "of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed" (*In re Angel B.*, (2002) 97 Cal.App.4th 454, 466, italics in original).

"[T]he exception does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.) The type of parent-child relationship that triggers the exception is a relationship which " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a

6

permanent home with new, adoptive parents. . . .' [Citation.]" (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534; accord, *In re Jasmine D., supra,* at pp. 1347-1350.)

Substantial evidence supports the finding that no exceptional circumstances existed under section 366.26, subdivision (c)(1)(B)(i) that required depriving the children of a permanent, adoptive home. Concerning the second prong – the children would benefit from continuing the relationship with father - the reports submitted by the Department at the hearing indicate father's relationship with the children did not promote their well-being " 'to such a degree as to outweigh the well-being the child[ren] would gain in a permanent home with [a] new, adoptive parent[]. . . .' [Citation.]" (*In re Brandon C., supra,* 71 Cal.App.4th at p. 1534.)

The relative caretakers, who had been involved with these special needs children for most of their young lives, had provided for 25 months a safe, stable, loving home where the children thrived and were now offering a permanent home through adoption. Father created confusion and disruption by talking about case issues with the children and telling them they were coming home. Father had not progressed beyond two hours per week of visitation. Young children with special needs require consistent parental involvement. The children's status was in limbo for the 44 months the Department and court were involved with the family. For most of that time, the children did not live in father's home. Visitation did not lead to the maintainenance or development of a parent-child relationship. Father's lack of substantial unmonitored contact with the children, his failure to make an effort to celebrate milestones and occasions which are important to children, and the fact he returned the children from visits with dirty diapers, indicate he did not play a parental role. In these circumstances, the conclusion reached by the juvenile court that no compelling reason existed to conclude termination of parental rights would be detrimental is amply supported by substantial evidence and not an abuse of discretion.

7

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIRSCHNER, J.*


We concur:



TURNER, P.J.



BAKER, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.